**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| DIANA MEY, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff*,<br><br>v.<br><br>ENTERPRISE FINANCIAL GROUP, INC., a Texas corporation, and NATIONAL REPAIR PROTECTION, LLC, a Florida limited liability company, TODD BEIKMANN, an individual,<br><br>    *Defendants*. | Case No. 15-cv-00463-UA-MRM<br><br>Hon. Mac R. McCoy |

**PLAINTIFF DIANA MEY'S MOTION FOR LEAVE TO CONDUCT
LIMITED JURISDICTIONAL DISCOVERY AND TO STAY BRIEFING
ON DEFENDANT TODD BEIKMANN'S RULE 12(b)(2) MOTION TO DISMISS**

**I.      INTRODUCTION**

As the Court is by now aware, this putative class action lawsuit arises from a marketing campaign that Defendant Enterprise Financial Group ("EFG") initiated through its agent Defendant National Repair Protection, LLC ("National Repair") to advertise aftermarket automobile warranties sold by EFG. Specifically, in her original complaint—which was filed on August 3, 2015—Plaintiff Diana Mey alleged that National Repair placed a high volume of unsolicited telemarketing calls to consumers across the country on behalf and for the benefit of EFG, and that these calls violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA") because (i) they were made to individuals who had registered their telephone numbers with the National "Do Not Call" Registry (the "DNC Registry"), and/or (2) were autodialed calls to individuals' cell phones that Defendants never obtained prior express consent to make.

Despite the year-long pendency of the litigation, Defendant National Repair has not yet appeared or filed any responsive pleading. Nevertheless, over the course of the litigation, Plaintiff continued to investigate her claims and subsequently discovered that Todd Beikmann—the owner and operator of National Repair—had an integral role in the marketing campaign at issue, and in fact, used National Repair as his alter ego so he could directly benefit and profit from the illegal calls. Given that—and with the Court's permission—on August 3, 2016, Plaintiff filed an amended complaint naming Beikmann as a named-party Defendant. (Dkt. 37.)

Rather than simply responding substantively to Plaintiff's allegations, however, Beikmann has now moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), claiming that this Court lacks the requisite personal jurisdiction over him. In support of that position, Beikmann has submitted an affidavit disavowing his alter ego relationship with National Repair and attempting to downplay his contacts with the state of Florida. But

Beikmann's affidavit raises more questions than it resolves and demonstrates the need for immediate jurisdictional discovery.

Specifically, Beikmann's self-serving affidavit doesn't adequately address the extent to which Beikmann influenced and controlled National Repair, much less the interrelationship between National Repair and Beikmann's other two shell companies, Reliant Repair Protection, LLC ("Reliant") and VSF Direct, LLC ("VSF"), which worked together to carry out the unlawful telemarketing campaign at issue in this lawsuit. Additionally, the statements in his affidavit make clear that more information is needed to demonstrate whether exercising personal jurisdiction is appropriate under Plaintiff's' alter ego theory including, *inter alia*, whether National Repair observed the requisite corporate formalities and how National Repair was capitalized.

Thus, rather than provide the Court with a basis for dismissing Beikmann from this action, the affidavit—at best—establishes that the question of personal jurisdiction is genuinely in dispute, and that limited jurisdictional discovery is needed. For this reason, Plaintiff respectfully requests that she be granted leave to conduct the limited jurisdictional discovery and that further briefing on Defendant's motion to dismiss be stayed until such discovery is complete.

## II.     RELEVANT FACTUAL AND LEGAL BACKGROUND

### A.     Defendants' Telemarketing Campaign and Mey's Underlying Allegations.

As noted above, Plaintiff's First Amended Complaint (the "FAC") alleges that Defendant EFG sells after-market automotive warranties and other products to consumers through aggressive telemarketing campaigns run via call centers. (FAC ¶ 2.) Defendant National Repair, a Florida limited liability company with its principal place of business in Punta Gorda Isle, Florida, is one such call center with a clear objective: to shill EFG products by making

autodialed calls to consumers across the country. (*Id.*) The problem with Defendants' practices is that their calls are illegal and violate the TCPA. (*Id.* ¶¶ 2, 8, 44–57.)

Plaintiff Mey—whose cellular telephone number has been listed on the DNC Registry for more than a decade—began receiving Defendants' calls in 2015, which claimed to be made by "Catherine" from "verification services." (*Id.* ¶¶ 27, 33.) The calls went on to pitch EFG's warranty services, stating that EFG was the "underwriter" for the policy and would pay all claims on the policy that National Repair was attempting to sell. (*Id.* ¶ 32.) Fed up, Plaintiff filed suit and behalf of herself and two classes of individuals similarly situated. (Dkts. 1, 37.)

    B.  **Facts and Procedural History Relevant to the Instant Motion.**

On August 3, 2016, Plaintiff filed the FAC naming Beikmann as a Defendant, and including additional facts to demonstrate that the Court's jurisdiction over him would be appropriate. (FAC ¶¶ 10-12.) Specifically, the FAC alleges that Mr. Beikmann owns and operates National Repair, which is a Florida entity, and that he controlled and dominated National Repair to such a degree that National Repair was and is his alter ego. (*Id.* ¶ 11.) Additionally, the FAC alleges that Mr. Beikmann also owns and operates the non-party call center Reliant Repair, as well as non-party VSF, an entity engaged in harvesting the telephone numbers that National Repair calls, and through which he potentially conducted business. (*Id.* ¶ 10.)

On September 12, 2016, and in an attempt to refute Plaintiff's alter ego theory of jurisdiction, Beikmann moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(2). (Dkt. 52.) In support of that Motion, Beikmann attached an affidavit (the "Beikmann Affidavit"), in which he claimed that: (1) he has never had access to National Repair's bank accounts or accounting records, (2) he has "at best" a minority interest in National Repair, (3) he was an independent

3

contractor of National Repair, (4) he was not a signatory to any National Repair bank account, (5) that he cannot make executive decisions, or pay or start billings, for National Repair, (6) that he was "instructed" by two other individuals at National Repair, and (7) that a third individual was responsible for handling National Repair's bank accounts and accounting. (Dkt. 52-1, Beikmann Aff. ¶¶ 5–11.) As discussed in detail below, Beikmann's Affidavit creates disputed factual issues that warrant limited jurisdiction discovery in order to respond.

### III. ARGUMENT

#### A. The Relevant Legal Standard for Establishing Personal Jurisdiction.

Personal jurisdiction is generally a two-part analysis, which requires a plaintiff (1) to establish a basis for jurisdiction under the Florida long-arm statute, Fla. Stat. § 48.193, and (2) to satisfy constitutional Due Process by showing that sufficient minimum contacts exist with the forum state, such that "'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Jurisdiction may be general or specific. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000). "The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state." *Id.*

The alter ego theory of jurisdiction that Plaintiff asserts in the instant action, is an exception to the traditional two-prong analysis. *Marsar v. Smith & Nephew, Inc.*, No. 8:13-CV-1244-T-27TGW, 2013 WL 4413722, at *2 (M.D. Fla. Aug. 14, 2013); *Bellairs v. Mohrmann*, 716 So. 2d 320, 322 (Fla. Dist. Ct. App. 1998). Under this theory, "federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal

jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002) (collecting cases); *accord RMS Titanic, Inc. v. Zaller*, 978 F. Supp. 2d 1275, 1301 (N.D. Ga. 2013); *see also Woods v. Jorgensen*, 522 So. 2d 935, 937 (Fla. Dist. Ct. App. 1988) (explaining that personal jurisdiction is not precluded "where the corporate entity is merely the shareholder's alter ego and is used for a fraudulent or misleading purpose to shield improper conduct").

At the pleadings stage, the plaintiff carries the initial burden of alleging facts sufficient to make out a *prima facie* case of personal jurisdiction. *R & R Games, Inc. v. Fundex Games, Ltd.*, No. 8:12-CV-01957-T-27, 2013 WL 784397, at *1 (M.D. Fla. Mar. 1, 2013). In moving to dismiss for lack of personal jurisdiction, the burden then shifts to the defendant to challenge plaintiff's allegations through affidavits or other evidence. *See id.* To the extent that the allegations in the complaint remain uncontroverted, "[t]he district court must construe the allegations in the complaint as true." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). To the extent that "the plaintiff's complaint and the defendant's evidence conflict, the court 'construe[s] all reasonable inferences in favor of the plaintiff.'" *Mighty Men of God, Inc. v. World Outreach Church of Murfreesboro Tennessee, Inc.*, 102 F. Supp. 3d 1264, 1270 (M.D. Fla. 2015) (quoting *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino,* 447 F.3d 1357, 1360 (11th Cir. 2006)).

Only "[i]f the defendant sufficiently challenges the plaintiff's jurisdictional allegations," must the plaintiff "affirmatively support [the] jurisdictional allegations set forth in the complaint." *Walack v. Worldwide Mach. Sales, Inc.*, 278 F. Supp. 2d 1358, 1364 (M.D. Fla.

2003). In such cases, "jurisdictional discovery is highly favored before resolving Federal Rule of Civil Procedure 12(b)(2) motions to dismiss for want of personal jurisdiction." *Segregated Portfolio 164, Inc. v. IS Agency, Inc.*, No. 8:13-CV-694-T-33TGW, 2013 WL 5744333, at *6 (M.D. Fla. Oct. 23, 2013) (citation and internal quotations omitted).

As discussed in detail below, because Beikmann's motion to dismiss challenges Plaintiff's *prima facie* showing of jurisdiction, limited jurisdictional discovery is necessary before she can adequately respond.

**B.    Plaintiff has Made a *Prima Facie* Showing of Personal Jurisdiction by Alleging Facts that Show National Repair is Beikmann's Alter Ego.**

To establish personal jurisdiction under an alter ego theory, a complaint need only allege "facts sufficient to pierce the corporate veil of the resident corporation." *Bellairs*, 716 So. 2d at 322. This requires a plaintiff to show (1) that the nonresident individual "dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact non-existent," (2) that the corporate form was "used fraudulently or for an improper purpose," and (3) that "the fraudulent or improper use of the corporate form caused injury to the [plaintiff]." *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011) (citation and emphasis omitted). Additional factors include the "disregard of corporate formalities" and inadequate capitalization. *MCI Telecommunications Corp. v. O'Brien Mktg., Inc.*, 913 F. Supp. 1536, 1541 (S.D. Fla. 1995).

Here, Plaintiff has alleged facts sufficient to pierce the corporate veil of National Repair. As an initial matter, it is undisputed that National Repair—which is organized under the laws of the state of Florida, and has its principal place of business in Punta Gorda Isle, Florida (FAC ¶ 9)—is subject to general jurisdiction in Florida because its continuous and systematic contacts

with the state. (*Id.*)[1] The three requisite elements of the alter ego theory are also sufficiently alleged. As to Beikmann's domination and control over National Repair, Plaintiff alleges that Beikmann "dominated, influenced, and/or controlled National Repair and the officers thereof . . . as well as the business, property, and affairs of National Repair such that National Repair functioned as the mere instrument or tool of Beikmann," and that Beikmann used National Repair "as a conduit for the conduct of his personal business, property, and affairs." (*Id.* ¶ 11(a), (c).) The unity of interest and ownership between Beikmann and National Repair is only part of the picture, however. Plaintiff further alleges that National Repair and Beikmann's two other shell companies—Reliant Repair and VSF—all "shared a common purpose and ownership without any separate existence independent of each other Beikmann, as demonstrated by the co-mingling of funds, information, and job tasks, between the purportedly independent companies." (*Id.* ¶ 11(b).)

The latter two elements of the alter ego analysis—that the corporate form was used for a fraudulent purpose and that the fraudulent purpose injured Plaintiff—go unchallenged by Defendant Beikmann. Plaintiff clearly alleges that National Repair was set up and operated for the fraudulent and improper purpose of avoiding individual liability, and specifically, to prevent potential victims of the telemarketing calls—including Plaintiff and the putative classes—from realizing a judgment in their favor. (*Id.* ¶ 11(d)–(g).) Plaintiff further alleges that National Repair was formed with inadequate capitalization (and unsurprisingly, is insolvent today), and that Beikmann operated it with disregard for corporate formalities. (*Id.* ¶ 11(e).)

These facts are therefore sufficient to set out a *prima facie* case of personal jurisdiction

---

[1] Moreover, National Repair—which has not retained counsel in this matter—has not opposed personal jurisdiction in any responsive pleading or 12(b)(2) motion. In failing to do so, National Repair has waived any objection to personal jurisdiction. *See Palmer v. Braun*, 376 F.3d 1254, 1259 (11th Cir. 2004).

7

under an alter ego theory.

### C. Beikmann's Affidavit Demonstrates that the Question of Jurisdiction is Genuinely Disputed.

Rather than resolve the question of personal jurisdiction, the Beikmann affidavit confirms that jurisdictional facts are in dispute and therefore that limited discovery into Beikmann's relationship with National Repair is necessary. For example, Beikmann's claimed lack of access to National Repair's bank accounts, and the fact that another individual "handled" such matters, does not disprove Plaintiff's allegation that Beikmann exerted dominance and control over the National Repair. Funds from National Repair could have easily "been diverted by Beikmann to himself" or his other two shell companies as Plaintiff alleges (*see* FAC ¶ 11(d)), even if Beikmann's name was not on any National Repair account. As such, Plaintiffs should be able to discovery additional information about how Beikmann and the National Repair operated.

Additionally, Plaintiff alleges that Beikmann owns and operates three shell companies that all share a "common purpose and ownership without any separate existence independent of each other or Beikmann," evidenced by the co-mingling of funds, information, and job tasks. (*Id.* ¶ 11(b).) Thus, Beikmann's claim that he personally lacks authority to make executive decisions for National Repair does not diminish the fact that he may be controlling National Repair through his other business entities, and discovery should be permitted to confirm whether this is the case.

Next, Beikmann's claim that he "was an independent contractor" opens a floodgate of questions. When was Beikmann an independent contractor? What other roles did he serve in the LLC? If National Repair is not Beikmann's alter ego, did his status as an independent contractor with a Florida LLC give rise to sufficient minimum contacts in the state? Tellingly, Plaintiff is aware of at least one contract, submitted in another lawsuit against Beikmann for equitable

8

contribution, in which Beikmann signed as the managing member of National Repair, *see Omnisure Group, LLC v. National Repair Protection, LLC et al.*, 16-cv-6310, Dkt. 12-1 (N.D. Ill. July 8, 2016), despite that his attestations that he is only an "independent contractor" here.

Finally, the fact that two individuals within the LLC "instructed" Beikmann proves nothing. The affidavit does not indicate what Beikmann was "instructed" about or how he was instructed. Therefore, whether Beikmann dominated and controlled National Repair to such a degree that it was his alter ego remains a fact in dispute.

### D. Given the Disputed Factual Issues Limited Jurisdictional Discovery Should be Permitted.

To fully and fairly resolve these questions, limited discovery is necessary. Indeed, the Eleventh Circuit recognizes a "qualified right" to jurisdictional discovery when jurisdictional facts are in dispute. *See Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 730–31 (11th Cir. 1982) ("Plaintiff must be given an opportunity to develop facts sufficient to support a determination on the issue of jurisdiction . . . 'the rules entitle a plaintiff to elicit material through discovery before a claim may be dismissed for lack of jurisdiction.'")). In general, "the plaintiff should be given the opportunity to discover facts that would support his allegations of jurisdiction," *Majd-Pour v. Georgiana Cmty. Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984), and courts should forego ruling on a 12(b)(2) motion to dismiss before such an opportunity is granted. *Segregated Portfolio,* 164, 2013 WL 5744333, at *6. "To hold otherwise would allow a defendant to defeat jurisdiction on the strength of a self-serving affidavit," by withholding relevant information. *Amerifactors Fin. Grp., LLC v. Enbridge, Inc.*, No. 6:13-CV-1446-ORL-22, 2013 WL 5954777, at *5 (M.D. Fla. Nov. 7, 2013).

Here, Plaintiff seeks to serve only limited discovery, attached hereto as Exhibit A, and to take a four-hour deposition of Defendant Beikmann at location of Beikmann's choosing. This

9

discovery will enable Plaintiff to answer the following questions: (1) What roles has Beikmann played within National Repair since its organization in 2014? (2) How do National Repair, Reliant, and VSF, work together to collect and call consumers' telephone numbers, and how does Beikmann profit from their activities? (3) Who are the other members of National Repair, what are their roles, and how does Beikmann manage them? (4) What, if any, corporate formalities did National Repair observe? (5) How, and to what degree, was National Repair capitalized? (6) What contacts did Beikmann have with the state of Florida in his capacity as an "independent contractor"? Because the alter ego doctrine necessarily demands "a fact-intensive inquiry," *Beck v. Royale Harbour of N. Palm Beach Condo. Ass'n, Inc.*, No. 14-80611-CIV, 2014 WL 4782962, at *2 (S.D. Fla. Sept. 3, 2014), Plaintiff should be allowed to develop the record, and answer these questions. *See, e.g.*, *Stansell v. BGP, Inc.*, No. 8:09-CV-2501-T-30AEP, 2011 WL 1296881, at *5 (M.D. Fla. Mar. 31, 2011) (granting jurisdictional discovery under alter ego theory); *see also Zamora Radio, LLC v. Last.fm LTD.*, No. 09-20940-CIV, 2011 WL 2580401, at *11 (S.D. Fla. June 28, 2011) (A request for jurisdictional discovery is appropriate when a plaintiff "set[s] forth the specific information sought that will establish personal jurisdiction.").

In addition to its necessity and reasonableness, Plaintiff's request for limited jurisdictional discovery should also be granted because it is timely. Although courts will sometimes deny such motions where a plaintiff delays in filing, *see, e.g.*, *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1281 (11th Cir. 2009), no such delay occurred here. Rather, Defendant Beikmann was added to this action less than two months ago, and Plaintiff had no reason to seek jurisdictional discovery prior to Beikmann filing his motion to dismiss on September 12, 2016. *See Gibson v. NCL (Bahamas) Ltd.*, No. 11-24343-CIV, 2012 WL 1952670, at *2 (S.D. Fla. May

30, 2012) (granting jurisdictional discovery where "Plaintiff may not have had any reason to request or begin jurisdictional prior to [Defendant] filing its motion to dismiss."). Indeed, Defendant's attorney first appeared in this case, and filed the instant motion to dismiss the day the Parties' amended case management report was due. Plaintiff therefore had no prior opportunity to seek jurisdictional discovery, and she should be permitted the opportunity now.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court enter an order (i) granting her leave to conduct the attached limited jurisdictional discovery and to conduct a a deposition of Mr. Beikmann, (ii) staying further briefing on Beikmann's motion to dismiss until such discovery is permitted, and (iii) providing such other and further relief that the Court deems reasonable and just.[2]

Respectfully submitted,

**DIANA MEY,** individually and on behalf of all others similarly situated,

By: s/ Scott D. Owens
    One of Plaintiff's Attorneys

Scott D. Owens
scott@scottdowens.com
SCOTT D. OWENS, P.A.
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
Tel: 954-589- 0588

---

[2] Alternatively, should the Court deny Plaintiff's requested relief, Plaintiff respectfully requests an additional two (2) weeks to respond to Defendant Beikmann's motion to dismiss.

        Eve-Lynn J. Rapp*
        erapp@edelson.com
        Stewart R. Pollock*
        spollock@edelson.com
        EDELSON PC
        123 Townsend Street, Suite 100
        San Francisco, CA 94107
        Tel: 415.212.9300
        Fax: 415.373.9435

        Anthony Paronich*
        anthony@broderick-law.com
        BRODERICK & PARONICH, P.C.
        99 High St., Suite 304
        Boston, MA 02110
        Tel: (508) 221-1510
        *Subject to Pro Hac Vice*

        Matthew P. McCue, Esq.*
        mmccue@massattorneys.net
        THE LAW OFFICE OF MATTHEW P. MCCUE
        1 South Avenue, Suite 3
        Natick, MA 01760
        Tel: (508) 655-1415
        Fax: (508) 319-3077

        *Admitted *Pro Hac Vice*

        *Counsel for Plaintiff and the putative Classes*

Dated: September 26, 2016

## CERTIFICATION PURSUANT TO LOCAL RULE 3.01

      As required by Local Rule 3.01(g), counsel for Plaintiff Stewart Pollack conferred with counsel for defendant Todd Beikman, by telephone and advised of the relief sought by this motion, and counsel were unable to agree on a resolution of the motion, and counsel advised that Mr. Beikman opposes the motion.

        /s/ *Scott D. Owens*
        Scott D. Owens

**CERTIFICATE OF SERVICE PURSUANT TO LOCAL RULE 3.01**

      I hereby certify that the foregoing was filed electronically on September 26, 2016 with the Court's ECF filing system, which will send a Notice of Electronic Filing to all counsel of record.

                                       /s/ *Scott D. Owens*
                                       Scott D. Owens